[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a summary process action brought by plaintiffs, who own a shopping center known as Tri-Town Plaza on Bungay Road in Seymour and Ansonia, to evict defendants from premises leased in said shopping center which defendants operate as a restaurant known as Good Morning America. The summary process action is based upon lapse of time due to the alleged expiration of their written lease agreement. Defendants have filed an answer denying that the lease has expired and that plaintiffs are entitled to possession. Defendants claim by way of special defense that they are in possession of the premises pursuant to an oral agreement modifying and extending the original lease and CT Page 3902 that they made substantial improvements to the leased premises in reliance upon that agreement.
After hearing the evidence and considering the claims of law and arguments made by both parties, the court finds the issues in favor of the plaintiff. It is undisputed that the parties entered into a written lease agreement for about a three year term from March 1, 1988 through April 30, 1991. Plaintiff's Exh. A. In December 1990, defendant Kathleen Allen contacted plaintiffs to obtain a lease extension and entered into negotiations with plaintiffs' authorized representative Beth Spiedell for a five year extension. Plaintiffs first proposal for a lease extension and modification agreement was unacceptable to said defendant because it only gave her 90 days notice of an option to terminate reserved by the landlords. Accordingly, defendant did not approve or sign the first proposed lease extension and modification agreement and met with Ms. Spiedell on May 3, 1991 to renegotiate the terms of the extension. In the interim, the original lease had expired, but defendant continued to occupy the premises and pay the last agreed upon monthly rent. Plaintiffs' agent advised defendant that they wished a termination clause to cover the possibility that a major tenant might expand. Defendant advised plaintiffs' agent that she desired to make improvements on the premises and required twelve months prior written notice of termination and requested a $20,000 fee if the landlord terminates the lease during the first three years of the extension. Thereafter, the landlords agreed to include these terms in the extension agreement and submitted a red-lined redraft of the agreement to defendant on May 28, 1991. Plaintiff's Exh. B and Defendant's Exhibit 1. The revised agreement was never formally executed by both parties.
While it is correct, as defendant claims, that the parties had agreed upon the terms to be contained in the lease extension and modification, the court does not find that the letter of May 28, 1991 from plaintiffs' agent to defendant or the improvements made by defendant based upon the oral agreement to modify and extend the lease are sufficient to take this matter outside the purview of the statute of frauds. Conn. Gen. Stat 52-550. Although the letter of May 28, 1991 evidences an agreement to enter into a written lease extension based upon the terms set forth in the draft, the memorandum does not evidence a completed agreement because one of the terms of that oral agreement was that a written lease would be executed by both parties. When defendant had reservations about the first proffered lease extension, she did not sign the proposed agreement. Under the circumstances of this case, plaintiffs would have no way of knowing that defendant agreed to be bound by all the terms of the revised lease extension. Defendant offered no proof that she CT Page 3903 even advised plaintiffs that the terms of the redraft were acceptable or a correct statement of their agreement. Although defendant's expenditures may have been in reliance upon her belief that the parties had an agreement, this was not part performance of any obligation on her part required by the agreement. Defendant did nothing to indicate to plaintiffs that she was satisfied with the redraft or that she agreed to be legally bound by its terms.
Whereas parties may agree to orally modify a written lease, "this determination requires a finding of mutuality of obligation. . . . The parties may validly agree to substitute or materially change a contract, but, as required in originally making it, mutual assent to its meaning and conditions is necessary. . ." Hess v. Dumouchel Paper Company, 154 Conn. 343,347 (1966). (citations omitted).
Here, the court finds that the parties had an oral agreement to enter into a written lease extension, but that the agreement did not take the place of an executed contract. The plaintiffs never agreed to be bound by an oral lease and made it clear to defendants that an executed lease extension was necessary for the proper functioning of their business. Although plaintiffs were willing to meet defendants' terms on the extension, they did require a signed lease agreement. It is clear from the evidence that plaintiffs never acquiesced or waived their requirement that the agreement be reduced to writing and signed by defendant. Defendants' improvements made in the leasehold premises without executing the lease extension and modification are not performance of such a character so as to entitled her to equitable relief taking this tenancy outside the statute of frauds. Seven Fifty Main Street Assoc. v. Spector,5 Conn. App. 170 (1985).
For the foregoing reasons, the court finds that defendant occupies the premises as a holdover tenant under an expired lease. The holdover tenancy having been properly terminated by notice to quit, plaintiffs are entitled to judgment of possession based upon termination of tenancy due to lapse of time.
Judgment may enter accordingly.
SO ORDERED,
SEQUINO, JUDGE CT Page 3904